**FILED**

FEB 2 5 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20 cr 0659- JLS |
| v. | INFORMATION |
| RONALD JACK OLMSTED, JR., | Title 18, U.S.C., Section 1343 – Wire Fraud |
| Defendant. | |

The United States Attorney charges, at all times material:

### Background

1.    In and around 2012, Defendant was a Senior Chief Petty Officer with the United States Navy and served in the Explosives Ordinance Disposal Mobile Unit Three. During this time, CHRISTOPHER TOUPS (charged elsewhere) also worked as a Chief Petty Officer in the U.S. Navy.  KELENE MEYER (also known as Kelene McGrath or Jaqueline Toups) (charged elsewhere) was a nurse employed by the Navy; she was also married to TOUPS. MICHAEL VILLARROEL (charged elsewhere) was a Navy medical doctor.

2.    During this period, the Traumatic Servicemembers Group Life Insurance program (TSGLI) provided short-term financial assistance to severely injured Navy and other U.S. military servicemembers and veterans to assist them in their recovery from traumatic injuries.   TSGLI provided tax-free, lump-sum payments of up to $100,000, depending on the type and severity of injury.

The Scheme to Defraud

3.     In and around 2012, defendant RONALD JACK OLMSTED, JR. ("Defendant") devised and intended to devise a scheme to defraud TSGLI, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by submitting false claims for TSGLI benefits.

Manner and Means

4.     It was part of the scheme that:

a.     In approximately late 2011 or early 2012, TOUPS offered to prepare a TSGLI claim on Defendant's behalf, and Defendant agreed.

b.     In around January 2012, TOUPS prepared a materially fraudulent TSGLI application in which he falsely reported that Defendant suffered the loss of activities of daily living for more than three months as a result of a March 7, 2011, helicopter rappelling accident. As part of the application, MEYER falsely reported that she reviewed Defendant's medical records and concluded that as a result of the traumatic injury, Defendant required assistance with the activities of daily living (including bathing, dressing, toileting, and transferring from a seated position) for more than three months.

c.     Defendant signed this TSGLI application on around January 17, 2012, and submitted it to TSGLI to support his claim for benefits. Shortly thereafter, TSGLI denied the claim, but notified Defendant of his right to appeal the denial.

d.     On around July 27, 2012, TOUPS and MEYER prepared a materially false appeal to Defendant's initial TSGLI application, in which they submitted additional materials. As part of the appeal, VILLARROEL falsely reported that he reviewed Defendant's medical records and concluded that Defendant had incurred a loss of the activities of daily living for more than three months. In the appeal, VILLARROEL falsely reported that Defendant could not stand or bear weight, suffered a loss of the activities of daily living for more than three months.

2

e.      Defendant did not suffer these effects from a traumatic fall from a helicopter on March 7, 2011 as claimed.  In reality, Defendant was involved in a helicopter rappelling accident during a Navy training exercise in Kauai, Hawaii. However, he sought medical care for the first time the following day, when he reported no history of recent trauma and exhibited no indications of a worrisome cause of lower back pain.  Instead, he reported pain similar to lower back pain he had experienced for the past three years.  Defendant was discharged the same day and left the hospital ambulatory.  Defendant had several follow-up visits with his primary care physician and later received treatment for pain management.

f.      Relying on the false information in Defendant's claim and appeal, TSGLI approved Defendant's application and paid $75,000 in benefits on around August 6, 2012.  The money was delivered by interstate wire transfer directly into Defendant's personal bank account.

g.      On around August 10, 2012, knowing that TSGLI paid the $75,000 as a result of Defendant's false and fraudulent claim, and knowing that he was not entitled to the full $75,000 that TSGLI paid, Defendant withdrew $30,000 in a cashier's check made payable to TOUPS, as a kickback for TOUPS's assistance in preparing the fraudulent TSGLI application.

h.      Around the same time Defendant was appealing the denial of his first TSGLI application, in around June 2012, TOUPS and MEYER prepared a second fraudulent TSGLI application on Defendant's behalf in which they falsely reported that on August 6, 2002, Defendant suffered the loss of activities of daily living (including bathing, dressing, toileting, and personal hygiene) for more than five months as a result of a fractured wrist after falling down a flight of stairs.  As part of the application, VILLARROEL falsely reported that he interviewed Defendant and reviewed his medical records, and concluded that he suffered these effects after falling from a ladder.  MEYER provided fabricated medical records to support these fraudulent claims.

3

i.    Defendant signed his name to this second TSGLI application on around June 20, 2012, and authorized TOUPS to submit it on his behalf.

j.    Defendant did not suffer these effects on August 6, 2002 as claimed. In reality, Defendant fractured his wrist after falling down a flight of stairs, but he did not require five months of assistance with the activities of daily living as falsely described in his application.

k.    Relying on the false information in Defendant's claim, TSGLI approved Defendant's second application and paid $100,000 in benefits on around July 26, 2012. The money was delivered by interstate wire transfer directly into Defendant's personal bank account.

l.    On around July 31, 2012, knowing that TSGLI paid the $100,000 as a result of Defendant's false and fraudulent claim, and knowing that he was not entitled to the full $100,000 that TSGLI paid, Defendant withdrew $25,000 in cash, which he delivered to TOUPS as a kickback for TOUPS's assistance in preparing the second fraudulent TSGLI application.

### Use of the Wires

5.    On or about August 6, 2012, in the Southern District of California and elsewhere, for the purpose of executing an essential part of the scheme described above, and attempting to do so, defendant RONALD JACK OLMSTED, JR. caused to be transmitted by means of interstate wire communication a $75,000 wire payment from TSGLI, located in Millington, Tennessee, to Defendant's personal bank account.

All in violation of Title 18, United States Code, Section 1343.

ROBERT S. BREWER, JR.
United States Attorney

DATED: 2/20/2020

EMILY W. ALLEN
ANDREW J. GALVIN
Assistant U.S. Attorneys

4